BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
PATRICIA N. SYVERSON (203111)
600 W. Broadway, Suite 900
San Diego, California 92101
psyverson@bffb.com
Telephone:   (619) 798-4593

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
ELAINE A. RYAN (*To be admitted Pro Hac Vice*)
CARRIE A. LALIBERTE (*To be admitted Pro Hac Vice*)
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
eryan@bffb.com
claliberte@bffb.com
Telephone: (602) 274-1100

SIPRUT, P.C.
STEWART WELTMAN (*To be admitted Pro Hac Vice*)
MICHAEL CHANG (*To be admitted Pro Hac Vice*)
17 North State Street, Suite 1600
Chicago, IL 60602
sweltman@siprut.com
mchang@siprut.com
Telephone: (312) 236-0000

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN ZEIGER, On Behalf of Himself and All Others Similarly Situated,<br><br>        Plaintiff,<br><br>     v.<br><br>WHITEWAVE FOODS COMPANY, a Delaware corporation,<br><br>        Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1.   VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*;<br>2.   VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 *et seq.*; and |

Plaintiff Dan Zeiger brings this action on behalf of himself and all others similarly situated against Defendant WhiteWave Foods Company, and states:

## NATURE OF ACTION

1.      Defendant manufactures, markets, sells and distributes a line of milk products fortified with "DHA" derived from algae under its brand name "Horizon Organic".[1]   Front and center and prominently featured by itself in a white banner running across the front of each and every milk carton, Defendant states "DHA Omega-3 Supports Brain Health" (hereinafter "the brain health representation").   The brain health representation also prominently appears on the left side panel of the half-gallon products[2] and the top of the two milk box products.[3]

2.      DHA is one of several omega-3 fatty-acids in the human diet.   These include, alpha-linolenic acid ("ALA"), the only omega-3 fatty acid considered essential in the diet, and eicosapentaenoic acid ("EPA") and docosahexaenoic acid ("DHA"). ALA is the precursor for EPA and DHA and other than relatively small amounts of EPA and DHA derived from our diets, much of the EPA and DHA is converted in the body from ALA.  EPA and DHA "are formed in varying amounts in animal tissues, especially fatty-fish, but not in plants."  (Institute of Medicine "Dietary Reference Intakes for Energy, Carbohydrates, Fiber, Fatty Acids, Cholesterol, Protein, and Amino Acids" (Macronutrients) (2002/2005) National Academy of Sciences.) ("IOM Report") at p. 427.

3.      A step in the conversion of DHA from ALA is the conversion of ALA into EPA. Thus, EPA is also a precursor to DHA and the EPA that is consumed in the diet, independent of ALA, can also be converted into DHA.

---

[1] These products include: (1) Horizon Organic Whole Milk Plus DHA Omega-3; (2) Horizon Organic Reduced Fat Milk plus DHA Omega-3; (3) Horizon Organic Fat-Free Milk plus DHA Omega-3; (4) Horizon Organic Chocolate Lowfat Milk Plus DHA Omega-3; (5) Horizon Organic Lowfat Chocolate Milk Box plus DHA Omega-3; and (6) Horizon Organic Lowfat Vanilla Milk Box plus DHA Omega-3 (collectively, "Horizon Organic" or "the Milk Products").
[2] The half-gallon products are: (1) Horizon Organic Whole Milk Plus DHA Omega-3; (2) Horizon Organic Reduced Fat Milk plus DHA Omega-3; (3) Horizon Organic Fat-Free Milk plus DHA Omega-3; and (4) Horizon Organic Chocolate Lowfat Milk Plus DHA Omega-3 (collectively, the "Half-Gallon Milk Products").
[3] The milk box products are: Horizon Organic Lowfat Chocolate Milk Box plus DHA Omega-3 and Horizon Organic Lowfat Vanilla Milk Box plus DHA Omega-3 (collectively, the "Milk Box Products").

4.      Plaintiff and his counsel have retained one of the world's foremost experts in brain chemistry and an expert in the field regarding whether and how substances may or may not affect brain function and health.  He has evaluated the ingredients in the Milk Products and concluded that the DHA-fortified Milk Products do not support brain health. This is because Americans consume sufficient amounts of ALA, a dietary precursor to DHA, as well as EPA, a precursor to DHA, and DHA in their daily diet such that DHA supplementation is unneeded, superfluous, and does not provide any brain health benefits.

5.      More specifically, the brain only uses about 4mg of DHA on a daily basis and the average consumption of DHA from dietary sources is 70mg per day in the United States.

6.      The 70mg daily consumption of dietary DHA (the range found by the IOM was 66-93mg per day for men and 52-69mg per day for women) is more than sufficient to meet the body's needs for DHA, including the brain, but even if, somehow for some reason, the amount of DHA consumed from the diet were to drop below whatever the body actually needs, the body automatically triggers an increase in the conversion rate of ALA to DHA to meet the body's needs.

7.      Thus, for example, even though vegans, by definition, do not consume DHA in their diets (as it is derived from animal tissues), the conversion rate of ALA to DHA was estimated to be twice that of fish-eaters.

8.      Furthermore, the body stores approximately 20-50 grams of DHA in its body fat, or 625-1562.5 times more DHA than in a serving of Defendant's Milk Products.  So even if one were to stop ingesting ALA, EPA, and DHA altogether, which would essential mean that one stopped eating, there would be sufficient DHA in the body to supply the brain's needs for a substantial period of time.

9.      And, "there is no accepted cut-off concentration of plasma or tissue DHA concentrations below which functions ascribed to n-3 fatty acids, such as visual or neural function, are impaired." (IOM Report at 443.)

10.      Consumers already have sufficient DHA stored in their bodies and derived from their daily diets such that DHA supplementation is unneeded and superfluous.

11.     As a result, DHA supplements, such as the DHA contained in Defendant's Milk Products, are wholly superfluous, unneeded and cannot and do not provide any of the represented brain health benefits.

12.     While Plaintiff does not need to rely upon and thus does not cite to the various randomized controlled studies ("RCTs") that have been conducted with regard to DHA and improved brain function – such as cognitive or memory functions – in support of his and the class' claims, those RCTs taken as a whole or individually do not support Defendant's brain health representation as they were either (1) negative in terms of DHA providing any brain health benefits, or (2) so poorly conducted and analyzed that any reported results from such studies are deemed unreliable by experts in the relevant field.

13.     In addition to being superfluous, the amount of DHA in Defendant's Milk Products is trivial.   The brain contains approximately 5000mg of DHA but only consumes about 4mg of DHA per day.  A serving of Defendant's Milk Products contains 32 mg DHA supplement.  As only an estimated 0.0005% of the 32 mg DHA actually enters the brain from the plasma pool, a serving of Defendant's Milk Products would replace about 0.0000032% of the brain's DHA content in the first day, and even less thereafter.  While this number may vary within a range of 10-100 times in either direction, even at the highest point in the range, the DHA in Defendant's Milk Products is trivial and cannot meaningfully contribute to brain structure, function or health.

14.     Thus, Defendant's Milk Products do not "support brain health" as Defendant represents on the front of the Milk Products' packaging and labeling. Defendant's representations are false, misleading, and reasonably likely to deceive the public.

15.     There have been two proceedings one before the FTC and one before the FDA involving the DHA contained in Defendant's Milk Products.

16.     In further support of Plaintiff's claims of falsity, on January 21, 2005, Martek Biosciences, the manufacturer of the supplemental DHA used in Defendant's Milk Products submitted a "Notification for a Nutrient Content Claim Based on an Authoritative Statement" before the FDA for DHA and ALA.

17.     The Notification sought FDA approval of a nutrient content claim that would set a daily value of 160 mg of DHA.

18.     In its Notification to the FDA, Martek, while stating that few foods had "very high levels of DHA," admitted that "DHA is found naturally in a wide variety of foods," that "ALA is the precursor for synthesis of DHA and EPA, which are formed in varying amounts in animal tissues…" and that "ALA is not known to have any specific dietary functions other than to serve as a precursor for synthesis of DHA and EPA in the body."

19.     Nevertheless, in support of its argument that consumers should be informed that they need to consume a 160 mg of DHA daily, Martek argued that ALA synthesis "is slow and inefficient and the conversion is determined by several factors, including background diet, age, gender, and the ratio between ALA and omega-6 fatty acids."  But, as alleged herein, the conversion rate increases as the need for DHA increases in order to meet the body's needs.

20.     Nevertheless, Martek argued to the FDA that "Studies now suggest that ALA synthesis alone does not produce the necessary DHA levels required by the human body. Therefore, it is important to get preformed DHA from the diet" and that "Preformed DHA is, therefore, the best mechanism to provide adequate DHA to support growth and maintenances of DHA content in tissues."[4]  In this vein, Martek argued that, "it is clear that conversion of ALA to DHA is particularly inefficient in the U.S. …." And that "it is difficult for the body to meets [sic] its DHA requirements merely from ALA synthesis" such that "1-1.5 g of ALA per day is likely not sufficient to meet even modest demands for DHA to support membrane synthesis and turnover."

21.     Yet, after making all of the above arguments in favor of a daily DHA requirement, the FDA flatly rejected all of them, issuing a proposed rule on April 28, 2014 stating that it had reviewed the information in the Martek Notification and was "prohibiting all of the nutrient content claims for omega-3 fatty acids DHA and EPA set forth in: …(2) the Martek notification submitted on January 21, 2005…"

---

[4] Preformed DHA is DHA that is either found in foods or is a DHA supplement such as Martek's supplemental DHA.

22.     In fact, Martek's Notificiation had proposed using 32 mg a day, the amount in each serving of Defendant's Milk Products, as 20% of the daily value for DHA and that this would constitute a qualifying level for the claim.

23.     In rejecting this request, the FDA ruled on April 28, 2014 that the purpose of setting such nutrient content claims "is to provide the public with meaningful information about the content of a product within the context of the total daily diet" and that insofar as the proposed claims "imply that a daily value for DHA or EPA has been established, the claims are false…"

24.     Thus, every one of the arguments made by Martek in favor of DHA supplementation was found to not be persuasive and rejected by the FDA and to claim that somehow an amount of preformed DHA via the Martek supplement is required on a daily basis is false.

25.     Likewise, in further support of Plaintiff's claims, on or about June 6, 2014 the FTC filed an action against i-Health, Inc. and Martek Biosciences with regard to a dietary supplement, BrainStrong, containing the same DHA that is in Defendant's Milk Products.  BrainStrong was advertised as clinically proven to improve adult memory based upon a RCT known as the MIDAS study.

26.     The FTC found Martek's brain health representations to be "false and misleading" based on its finding that the MIDAS study, Martek's key study cited in support of its claims, not only was poorly conducted and analyzed but failed to support any of Martek's claims and that the FTC's experts found the totality of all of the evidence submitted by Martek in support of its memory claims to be "inadequate" to back the claims.  This science regarding DHA has not changed since and, if anything, has gotten worse for supplemental DHA.

27.     On or around June 9, 2014, the FTC and Martek entered into a consent decree requiring that Martek and its assigns refrain from, among other things, making any representations about the health benefits of Martek's DHA supplement without having adequate substantiation for any such claims – i.e., competent and reliable scientific evidence accepted by experts in the field.

28.     Since the entry of this consent decree there have been no such studies supporting that Martek's DHA supports brain health.

29.     As further corroboration of Plaintiff's falsity claims, but not as a separate basis for Defendant's liability here, since Defendant WhiteWave is an assignee of Martek, the claims that it makes about the Martek DHA in its Milk Products are in violation of the FTC consent decree.

30.     As a result of Defendant's deceptive brain health representation, consumers – including Plaintiff and members of the proposed Classes – have purchased a product that does not perform as advertised.  Moreover, Plaintiff and Class members have paid a significant price premium for Defendant's DHA-fortified Milk Products over other comparable products, including Defendant's other organic milk products that do not make the deceptive brain health representation. For example, on average, the Milk Products retail between 20 cents and $1.50 more than Defendant's Horizon Organic Milk products without the DHA additive and deceptive brain health representation.

31.     Plaintiff brings this action on behalf of himself and other similarly situated consumers who have purchased the Milk Products to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Milk Products.  Plaintiff alleges violations of the Consumers Legal Remedies Act and the Unfair Competition Law created by Defendant's advertising, including false labeling.

**JURISDICTION AND VENUE**

32.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some of the members of the Class are citizens of states different from Defendant.

33.     This Court has personal jurisdiction over Defendant because some of the acts complained of occurred in California, as Plaintiff read and relied upon Defendant's false representations and was injured by his purchase of the Product in California.

34.     Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while he resided

in this judicial district.  Venue is also proper under 18 U.S.C. §1965(a) because some of the acts complained of occurred in this judicial district, as Plaintiff read and relied upon Defendant's false representations and was injured by his purchase of Defendant's Product in this judicial district.

## PARTIES

35.     Plaintiff Dan Zeiger resides in Greenbrae, California.  During June 2017[5], Plaintiff Zeiger was exposed to and saw Defendant's brain health representation by reading the Horizon Organic Whole Milk Plus DHA Omega-3 label. Plaintiff Zeiger purchased one 1/2 gallon carton of Horizon Organic Whole Milk Plus DHA Omega-3 at Mollie Stone's in Greenbrae, CA during this period in reliance on Defendant's brain health representation.  He paid $5.59 for the Milk Product. The Horizon Organic Whole Milk Plus DHA Omega-3 Plaintiff purchased does not support brain health as represented.  As a result, Plaintiff Zeiger suffered injury in fact at the time of purchase. Had Plaintiff Zeiger known the truth about Defendant's misrepresentations, including that DHA supplementation is superfluous, that there is a trivial amount of DHA in the Milk Products, and that the Milk Products cannot and do not provide the brain health benefits Defendant represented they would, he would not have purchased and consumed Horizon Organic Whole Milk Plus DHA Omega-3.

36.     Defendant WhiteWave Foods Company ("WhiteWave Foods"), a wholly-owned subsidiary of Defendant Dean Foods, is organized and existing under the laws of the state of Delaware.  Defendant WhiteWave Foods' headquarters is at 12002 Airport Way, Broomfield, Colorado 80021.  WhiteWave Foods manufactured, advertised, marketed, and sold the DHA-fortified milk to tens of thousands of consumers nationwide, including the Class states. WhiteWave Foods also distributed the false, misleading and deceptively labeled Milk Products to consumers throughout the United States from its five regional distribution centers, one of which is located in City of Industry, California.

---

[5] Plaintiff's purchase occurred after November 24, 2015, the end date of the settlement class period in *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, No. 1:12-MD-02324-Lenard/O'Sullivan (S.D. Fla.).

1

**FACTUAL ALLEGATIONS**

2

*The DHA-fortified Milk Products*

3      37.      Defendant manufactures, distributes, markets and sells nationwide, including in the

4  Class states, a variety of Milk Products fortified with DHA Omega-3 under its brand name "Horizon

5  Organic". This lawsuit concerns six of those products: (1) Horizon Organic Whole Milk Plus DHA

6  Omega-3; (2) Horizon Organic Reduced Fat Milk plus DHA Omega-3; (3) Horizon Organic Fat-

7  Free Milk plus DHA Omega-3; (4) Horizon Organic Chocolate Lowfat Milk Plus DHA Omega-3;

8  (5) Horizon Organic Lowfat Chocolate Milk Box plus DHA Omega-3; and (6) Horizon Organic

9  Lowfat Vanilla Milk Box plus DHA Omega-3.

10      38.      Defendant's Milk Products are sold in virtually every major food, drug, and mass

11  retail outlet in the country.  The Half-Gallon Milk Products retail for approximately $5.00-$6.00.

12  The two Milk Box Products retail for approximately $9.00 per six pack.  The following are screen

13  shots of some of the Products:

14

15

16

17      

18

19

20

21

22      39.      Since the Milk Products' launch in 2007, Defendant has consistently conveyed the

23  message to consumers throughout the United States, including the Class states, that its Milk

24  Products "support[] brain health" in children over two and adults. They do not. Defendant's brain

25  health representation is false, misleading and deceptive.

26  *Defendant's Deceptive Advertising and Marketing of the Milk Products*

27      40.      Each and every Milk Product package and label repeatedly emphasizes that the

28

1   DHA-fortified milk supports brain health.  Each and every consumer who purchases the Milk

2   Products is exposed to this deceptive brain health representation, which appears prominently and

3   conspicuously on the front and in the center of each carton as follows:

4



(Half-Gallon Milk Products)

 

(Milk Box Products)

41.     The brain health representation appears again on the top of the two Milk Box Products:





42.     The brain health representation appears again on the left-side panel of the Half-Gallon Milk Products:





(close-up photo of the brain health representation on the left side panel of the Horizon Organic

Fat-Free Milk plus DHA Omega-3 Product)

***The Milk Products Do Not Support Brain Health***

43.     An 8 oz. serving of the Milk Products contains approximately 32 mg of DHA supplement.  Contrary to Defendant's representations made on each and every milk carton, the supplemental DHA does not support brain health, especially in the trivial amount found in a serving of Defendant's Milk Products.

44.     DHA can either be obtained directly from the diet or synthesized from its dietary precursors, the most abundant and relevant of which is alpha-linolenic acid (ALA). ALA is consumed in a variety of food sources in the American diet and can be and is converted to DHA. For this reason, the Institute of Medicine and experts in the field consider DHA to be a non-essential dietary nutrient, meaning that the supplemental DHA in Defendant's Milk Products does not need to be consumed in addition to what is already present in the American diet (either directly or from ALA/EPA conversion). Thus, the supplemental DHA in Defendant's Milk Products is superfluous, unneeded and provides no brain health benefits.

45.     In fact, the only omega-3 fatty acid for which the IOM has set an Adequate Intake level is ALA and it is "based on the median intake of a-linolenic acid in the United States where a deficiency is basically non-existent in non-institutionalized populations."  In short, according to the IOM there is no deficiency of ALA, the precursor to DHA. Thus, supplemental DHA is superfluous, unneeded, and as a result, will not and cannot provide any of the represented brain health benefits. In this regard, the IOM has set the Adequate Intake of ALA for men at 1.6g per day and 1.1g per day for women.

46.     For this reason, the IOM – which regularly convenes panels of experts to evaluate and issue recommended dietary requirements for a variety of nutrients – has not issued a Dietary Requirement for DHA and states instead that Americans have adequate intakes of omega-3 fatty acids from their diets, including DHA. Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids (Macronutrients): The National Academies Press; 2005. Thus, supplementation of DHA (by, for instance, drinking Defendant's Milk Products) is superfluous and provides no brain health benefits.

47.     Plaintiff's expert's opinions, summarized above, are supported by well-established science demonstrating that Americans consume sufficient omega-3 fatty acids (ALA, EPA, and DHA) in their daily diets such that DHA supplementation is unneeded and superfluous, and are also  corroborated, at least in part, by the IOM Report, all of which leads to the conclusion that Defendant's brain health representation is false, misleading and reasonably likely to deceive purchasers of Defendant's Milk Products.

***The Impact of Defendant's Wrongful Conduct***

48.     Plaintiff and Class members have been and will continue to be deceived or misled by Defendant's deceptive brain health representation.  Plaintiff purchased and consumed Horizon Organic Whole Milk Plus DHA Omega-3 during the Class period and in doing so, read and considered the Milk Product labels and based his decision to buy the premium priced Milk Product on the brain health representation.  As a result, Plaintiff and the Class members have been damaged in their purchases of these Milk Products and have been deceived into purchasing Milk Products

that they believed, based on Defendant's representations, supported brain health, when, in fact, they do not.

## CLASS DEFINITION AND ALLEGATIONS

49.     Plaintiff brings this action on behalf of himself and all other similarly situated California consumers pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

> **Multi-State Class Action**
>
> All consumers who, between November 25, 2015 and the date notice is disseminated, purchased Horizon Organic Milk[6] in California, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington.
>
> Excluded from this Class are Defendant and its officers, directors, employees, those who purchased Horizon Organic Milk for the purpose of resale, and those who made a claim in the *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practices Litig.*[7] lawsuit settlement for Horizon Organic Milk purchases prior to November 25, 2015 to the extent that Defendant or its agents have maintained accurate lists of those claimants.

50. In the alternative, Plaintiff seeks certification of the following Class:

> **California-Only Class Action**
>
> All consumers who, between November 25, 2015 and the date notice is disseminated, purchased Horizon Organic Milk[8] in California.
>
> Excluded from this Class are Defendant and its officers, directors and employees, those who purchased Horizon Organic Milk for the purpose of resale, and those who made a claim in the *In re Horizon Organic*

---

[6] Horizon Organic Milk includes: (1) Horizon Organic Whole Milk Plus DHA Omega-3; (2) Horizon Organic Reduced Fat Milk plus DHA Omega-3; (3) Horizon Organic Fat-Free Milk plus DHA Omega-3; (4) Horizon Organic Chocolate Lowfat Milk Plus DHA Omega-3; (5) Horizon Organic Lowfat Chocolate Milk Box plus DHA Omega-3; and (6) Horizon Organic Lowfat Vanilla Milk Box plus DHA Omega-3.
[7] Case No 1:12-md-02324-JAL in the U.S. District Court for the Southern District of Florida.
[8] Horizon Organic Milk includes: (1) Horizon Organic Whole Milk Plus DHA Omega-3; (2) Horizon Organic Reduced Fat Milk plus DHA Omega-3; (3) Horizon Organic Fat-Free Milk plus DHA Omega-3; (4) Horizon Organic Chocolate Lowfat Milk Plus DHA Omega-3; (5) Horizon Organic Lowfat Chocolate Milk Box plus DHA Omega-3; and (6) Horizon Organic Lowfat Vanilla Milk Box plus DHA Omega-3.

*Milk Plus DHA Omega-3 Mktg. & Sales Practices Litig.*[9] lawsuit settlement for Horizon Organic Milk purchases prior to November 25, 2015 to the extent that Defendant or its agents have maintained accurate lists of those claimants.

51.     **Numerosity**.   The members of the Classes are so numerous that joinder of all members of the Classes is impracticable. Plaintiff is informed and believes that the proposed Classes contain thousands of purchasers of the Milk Products who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

52.     **Existence and Predominance of Common Questions of Law and Fact**.   This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.   These common legal and factual questions include, but are not limited to, the following:

(a)     whether Defendant's representations discussed above are misleading, or objectively reasonably likely to deceive;

(b)     whether Defendant's alleged conduct is unlawful;

(c)     whether the alleged conduct constitutes violations of the laws asserted;

(d)     whether Defendant engaged in false or misleading advertising; and

(e)     whether Plaintiff and Class members are entitled to appropriate remedies, including restitution, corrective advertising and injunctive relief.

53.     **Typicality**.  Plaintiff's claims are typical of the claims of the members of the Classes because, *inter alia*, all Class members were injured through the uniform misconduct described above, and were subject to Defendant's deceptive brain health statements that accompanied each and every carton of the Milk Products.   Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Classes.

54.     **Adequacy of Representation**.   Plaintiff will fairly and adequately protect the interests of the members of the Classes.  Plaintiff has retained counsel experienced in complex

---

[9] Case No 1:12-md-02324-JAL in the U.S. District Court for the Southern District of Florida.

1  consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff

2  has no adverse or antagonistic interests to those of the Classes.

3        55.    **Superiority**.  A class action is superior to all other available means for the fair and

4  efficient adjudication of this controversy.  The damages or other financial detriment suffered by

5  individual Class members is relatively small compared to the burden and expense that would be

6  entailed by individual litigation of their claims against the Defendant.  It would thus be virtually

7  impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for

8  the wrongs done to them.  Furthermore, even if Class members could afford such individualized

9  litigation, the court system could not.   Individualized litigation would create the danger of

10 inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation

11 would also increase the delay and expense to all parties and the court system from the issues raised

12 by this action.  By contrast, the class action device provides the benefits of adjudication of these

13 issues in a single proceeding, economies of scale, and comprehensive supervision by a single court,

14 and presents no unusual management difficulties under the circumstances here.

15                                **COUNT I**
16          **Violation of Business & Professions Code §17200,** *et seq.*
              **Fraudulent Business Acts and Practices**
17        **(On Behalf of the Multi-State or California-Only Class)**

18       56.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as

19 if fully set forth herein.

20       57.    Plaintiff brings this claim individually and on behalf of the Classes.

21       58.    As alleged herein, Plaintiff has suffered injury in fact and lost money or property as

22 a result of Defendant's conduct because he purchased the Milk Product in reliance on Defendant's

23 brain health representations detailed above, but did not receive a product that supports brain health.

24       59.    Plaintiff suffered that injury at the time of purchase, when he bought a product that

25 does not deliver the benefits it promises.

26       60.    The Unfair Competition Law, Business & Professions Code §17200, *et seq.*

27 ("UCL"), prohibits any "fraudulent" business act or practice and any false or misleading

28
                                    - 16 -

1   advertising.

2        61.    In the course of conducting business, Defendant committed "fraudulent business

3   act[s] or practices" and false or misleading advertising by, *inter alia*, making the brain health

4   representation (which also constitutes advertising within the meaning of §17200) on its Milk

5   Products' labeling, as set forth more fully herein.

6        62.    Defendant's actions, claims and misleading statements, as more fully set forth

7   above, are false, misleading and/or likely to deceive the consuming public within the meaning of

8   Business & Professions Code § 17200, *et seq.*

9        63.    Plaintiff and other members of the Classes have in fact been injured as a result of

10  Defendant's false and misleading brain health representation. Plaintiff and the other Class members

11  have suffered injury in fact and lost money as a result of their purchase(s) of Defendant's Milk

12  Products that do not provide brain health benefits.

13       64.    Unless restrained and enjoined, Defendant will continue to engage in the above-

14  described conduct. Accordingly, injunctive relief is appropriate.

15       65.    Plaintiff, on behalf of himself, all others similarly situated, and the general public,

16  seeks restitution of all money obtained from Plaintiff and the members of the Classes collected as

17  a result of unfair competition, an injunction prohibiting Defendant from continuing such practices,

18  corrective advertising and all other relief this Court deems appropriate, consistent with Business &

19  Professions Code §17203.

20
21  **COUNT II**
    **Violations of the Consumers Legal Remedies Act –**
    **Civil Code §1750 *et seq.***
22  **(On Behalf of the California-Only Class)**

23       66.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as

24  if fully set forth herein.

25       67.    Plaintiff brings this claim individually and on behalf of the California Class.

26       68.    This cause of action is brought pursuant to the Consumers Legal Remedies Act,

27  California Civil Code §1750, *et seq.* (the "Act").

28

- 17 -

69.     Plaintiff is a consumer as defined by California Civil Code §1761(d).  Defendant's Milk Products are "goods" within the meaning of the Act.

70.     Defendant violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the California Class which were intended to result in, and did result in, the sale of the Milk Products:

(5)     Representing that [the Milk Products have] . . . characteristics, . . . uses [and] benefits . . . which [they do] not have . . . .

*        *        *

71.     Plaintiff and the California Class have in fact been deceived as a result of their reliance on Defendant's material brain health representation. Plaintiff and other Class Members have suffered injury in fact and lost money as a result of their purchases of Defendant's Milk Products that do not provide brain health benefits.

72.     Pursuant to California Civil Code §1782(d), Plaintiff and the California Class seek a Court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

73.     Pursuant to §1782 of the Act, Plaintiff notified Defendant in writing by certified mail of the particular violations of §1770 of the Act and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act.  A copy of the letter is attached hereto as Exhibit A.

74.     If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act, Plaintiff will amend this complaint to add claims for actual, punitive and statutory damages, as appropriate.

75.     Defendant's conduct is fraudulent, wanton and malicious.

76.     Pursuant to §1780(d) of the Act, attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum.

1

**PRAYER FOR RELIEF**

2

Wherefore, Plaintiff prays for a judgment:

3

      A.      Certifying the Classes as requested herein;

4

      B.      Awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the

5

proposed Class members;

6

      C.      Awarding injunctive relief as permitted by law or equity, including: enjoining

7

Defendant from continuing the unlawful practices as set forth herein;

8

      D.      Ordering Defendant to engage in a corrective advertising campaign;

9

      E.      Awarding attorneys' fees and costs; and

10

      F.      Providing such further relief as may be just and proper.

11

Dated: August 4, 2017        **BONNETT, FAIRBOURN, FRIEDMAN**

12

                **& BALINT, P.C.**
                 s/ Patricia N. Syverson

13

                Patricia N. Syverson (203111)
                600 W. Broadway, Suite 900

14

                San Diego, California 92101
                psyverson@bffb.com

15

                Telephone:  (619) 798-4593

16

                **BONNETT, FAIRBOURN, FRIEDMAN**

17

                **& BALINT, P.C.**
                Elaine A. Ryan (*To be Admitted Pro Hac Vice*)

18

                Carrie A. Laliberte (*To be Admitted Pro Hac Vice*)
                2901 N. Central Ave., Suite 1000

19

                Phoenix, AZ 85012

20

                eryan@bffb.com
                claliberte@bffb.com

21

                Telephone:  (602) 274-1100

22

                **SIPRUT, P.C.**

23

                STEWART WELTMAN (*To be admitted Pro Hac Vice*)
                MICHAEL CHANG (*To be admitted Pro Hac Vice*)

24

                17 North State Street, Suite 1600
                Chicago, IL 60602

25

                sweltman@siprut.com
                mchang@siprut.com

26

                Telephone: (312) 236-0000

27

                *Attorneys for Plaintiff*

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

3        I hereby certify that on August 4, 2017, I electronically filed the foregoing with the Clerk

4   of the Court using the CM/ECF system which will send notification of such filing to the e-mail

    addresses denoted on the Electronic mail notice list

5        I certify under penalty of perjury under the laws of the United States of America that the

6   foregoing is true and correct.  Executed on August 4, 2017.

7

8                                    /s/*Patricia N. Syverson*_____
                                     Patricia N. Syverson (203111)
9                                    BONNETT FAIRBOURN FRIEDMAN
                                     & BALINT, P.C.
10                                   600 W. Broadway, Suite 900
                                     San Diego, CA 92101
11                                   Telephone: (619) 798-4593

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28